IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| LAFARGE NORTH AMERICA INC., a Maryland corporation, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) Case No. 4:08-cv-95 ) |
| WELLS GROUP, INC. d/b/a COFFEE COUNTY READY MIX, a Tennessee corporation, and MICHAEL JASON WELLS, an individual, | ) MATTICE/CARTER ) ) ) ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

The motion of Lafarge North America Inc. (Lafarge) for default judgment against defendant Michael J. Wells is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). This matter arises from a credit agreement (Credit Agreement) entered into by the parties in which Lafarge agreed to extend credit to Wells Group, Inc. (WGI) for the purchase of construction materials and Michael Wells agreed to personally guarantee WGI's debt to Lafarge. For the reasons stated herein, it is RECOMMENDED judgment be entered against Michael J. Wells in favor of Lafarge in the amount of $299,568.81, plus interest from and including May 6, 2009 to the date of this Order at the rate of $55.94 per diem and $17,162.50 in attorney's fees and expenses and court costs.        .

*Procedural Background*

On December 4, 2008, Plaintiff filed its Complaint against Wells Group, Inc. d/b/a Coffee County Ready Mix and Michael Jason Wells ("Wells"). (Docket Entry #1.) Defendant Wells was personally served with a Summons and a copy of the Complaint on December 10, 2008. A true and correct copy of Proof of Service upon Wells is entered in the record as Docket

Entry #4. Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Wells' answer to the Complaint was due on or before December 30, 2008. Wells has failed to appear, answer or otherwise plead. The Court Clerk entered default against Wells on March 30, 2009. (Docket Entry #9.)

*Review of the Complaint*

The undersigned must first examine the complaint to ensure that it states a claim for which relief can be granted. Courts have recognized that "[i]t is fundamental that not all injuries are legally compensable; a tenet which may not be bypassed simply because a party fails to respond to a complaint. Thus, among the considerations a court is to employ when determining the propriety of entering a judgment by default is whether there exists a sufficient basis in the pleading for the judgment's entry; or similarly, whether a viable cause of action is alleged." *Id.* (citations omitted). Accordingly, the United States Court of Appeals for the Sixth Circuit has decided that courts should exercise their given discretion in favor of denying a motion for default judgment when the plaintiff's complaint fails to state a claim upon which relief can be granted. *Bailey v. Harrison*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997); *In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (applying Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55); *see also Parks v. Conley*, 178 F.3d 1295, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987). In determining whether the complaint states a claim, the court should accept as true all well-pleaded allegations, except those relating to the amount of damages. *Cook*, 2006 WL 908600, at *3.

Jurisdiction is appropriate in this Court because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). When an action is predicated on diversity jurisdiction, the District Court is bound by the conflicts of law rules for the district in which it sits. *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 821 (6th Cir. 1977). Therefore, this Court will apply the Tennessee conflicts of law rules.

The parties did not specify a forum in the Credit Agreement. Absent agreement, the law of the state in which the contract was executed applies to state law causes of action. *Boatland*, 558 F.2d at 821. A guaranty is governed by the laws of the state in which the guarantee extends credit. *Moody v. Kirkpatrick*, 234 F. Supp. 537, 541 (M.D. Tenn. 1964). Accordingly, the Court finds that the laws of Tennessee apply to Plaintiff's cause of action against Wells because the Credit Agreement was executed in Tennessee and Lafarge extended credit to WGI in Tennessee in reliance on Wells' unconditional guaranty.

The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn.Ct.App.2006). In a breach of contract claim, the plaintiff's rights are to be determined from the contract entered into and the consequences of those contracts. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 138 S.W.3d 1, 26 (Tenn Ct. App. 2005). *See also* 38A C.J.S. Guaranty § 65 (2009) ("The amount of a guarantor's liability is controlled by the terms of the contract of guaranty, as construed by the general rules of construction.") Plaintiff's complaint alleges the following:

On or about March 28, 2006, Wells, on behalf of Wells Group, Inc. ("WGI") and as an individual unconditional guarantor, executed and transmitted to Plaintiff a Credit Application

and Agreement ("Credit Agreement") whereby WGI requested that Plaintiff make sales on credit to it. Plaintiff accepted the Credit Agreement on or about March 28, 2006. Among other terms, the Credit Agreement obligates WGI to pay for all goods purchased from Plaintiff within thirty (30) days. The Credit Agreement also provides that in the event invoices are past due, WGI and Wells are obligated to pay interest at the rate of 18% per annum or the maximum rate allowed by law, whichever is less, and Plaintiff's attorney's fees and costs in collection on the account. The Credit Agreement executed by WGI and Wells states:

> IN CONSIDERATION FOR THE SALES TO APPLICANT ON OPEN ACCOUNT, APPLICANT AND THE UNDERSIGNED AGREE THAT PAYMENT FOR ALL MATERIALS INVOICED IS DUE ON OR BEFORE THE LAST DAY OF THE MONTH NEXT FOLLOWING THE MONTH OF SHIPMENT OF THE MATERIALS AND SHALL BE MADE AT THE OFFICE OF LAFARGE INDICATED ON THE INVOICE. IT IS FURTHER AGREED THAT INTEREST MAY ACCRUE ON ALL INVOICED AMOUNTS THAT ARE PAST DUE AT A RATE PER ANNUM EQUAL TO THE LESSER OF (I) 18% OR (II) THE MAXIMUM RATE ALLOWED BY APPLICABLE STATE LAW . . . UNTIL PAID IN FULL.

From approximately March 2006 through September 2008, Plaintiff sold various construction materials to WGI at its specific request and demand. For each such sale, Plaintiff issued and delivered to WGI an invoice detailing such items as date of sale, delivery date, nature and price of product sold, and terms of payment for the goods (collectively "Invoices"). The reverse side of the original of each of the Invoices provides:

> 2. Terms of Payment: . . . Invoices not paid by the 10th of the month are due and payable in full on the last day of the month following the month of shipment. Invoices not paid by such due date shall be considered past-due and may bear interest at the rate of one and one-half percent (1.5%) per month (eighteen percent (18%) per annum) or the maximum rate permitted by applicable law, if lower, thereafter until paid. Buyer agrees to reimburse Seller for all reasonable collection costs, attorneys fees and expenses, court costs and other charges incurred by Seller if the account created hereunder is not paid when due...

WGI received and accepted the construction materials which Lafarge sold and delivered

4

to it as more fully described in the Invoices. Lafarge fully performed all of its obligations to WGI in connection with the sale of the construction materials detailed in the Invoices. WGI has not paid Lafarge for the construction material Lafarge sold to WGI and, under the terms of the Credit Agreement, Wells unconditionally personally guaranteed cash payment to Lafarge for any amount owed to it by WGI and has not yet made payment to Lafarge. Wells' execution of the Credit Agreement constitutes an absolute and unconditional guaranty for the obligations of WGI to Lafarge pursuant to the terms:

> IN CONSIDERATION FOR SALES TO APPLICANT [WGI] ON OPEN ACCOUNT, THE UNDERSIGNED [Michael Jason Wells] INDIVIDUALLY AND UNCONDITIONALLY GUARANTEES TO LAFARGE AND ITS SUCCESSORS, THE PROMPT PAYMENT OF SAID ACCOUNT IF NOT PAID WHEN DUE BY APPLICANT. APPLICANT AND THE UNDERSIGNED FURTHER AGREE TO REIMBURSE LAFARGE FOR ALL ATTORNEY'S FEES, COURT COSTS, AND OTHER CHARGES, IF THIS ACCOUNT SHOULD BE PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION.

(Credit Agreement, Exhibit A to Declaration of Roger Schultz.)

The undersigned concludes based on the allegations set forth in the complaint that Lafarge has adequately stated a claim for breach of a guaranty agreement against defendant Wells. Further, the complaint sufficiently sets forth the terms of payment and damages under the guaranty agreement, as stated above. Pursuant to the Credit Agreement, LaFarge is entitled to payment by Wells of WGI's account, which includes interest according to the terms of the Credit Agreement, as well as reimbursement of attorney's fees and court costs incurred to collect payment.

*Determination of Damages*

Entry of default establishes only liability on the part of the defendant. Unless damages are liquidated, the amount of damages must be proven. *Antoine v. Atlas Turner, Inc.*, 66 F.3d

5

105, 110 (6th Cir. 1995). *See also*, *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir.1982) (en banc) ("Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved."); *Kelley v. Carr*, 567 F.Supp. 831, 841 (W.D.Mich.1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages."). Ordinarily, the District Court must hold "an evidentiary proceeding in which the defendant has the opportunity to contest the amount [of damages]." *Antoine,* 66 F.3d at 110-111 (brackets original) (citing *Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992). However, unlike in *Antoine*, the defendant in the instant case has made no appearance or responded to the motion for default judgment despite being served with the motion for default judgment which sets forth the substantial amount of damages sought by plaintiff. Fed. R. Civ. P. 55 (b)(2) provides in relevant part:

> If the party against whom a default judgment is sought has appeared personally or by representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing." The court *may* conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; [or] (B) determine the amount of damages...."

(Emphasis added). Given that defendant has made no appearance in this case despite being served with the motion for default judgment, and because the language of Rule 55 (b)(2) provides a "court *may* conduct hearings," (emphasis added), the undersigned shall rely upon the uncontested, sworn affidavit of Roger Schultz, as well as exhibits attached thereto, in recommending the amount of damages due the Plaintiff in the instant case. Accordingly, the undersigned Magistrate Judge makes the following findings:

1. Defendant Wells is not on active duty in the United States military. 50 U.S.C. § 521. (Affidavit of Mary Beth Hagan Regarding Military Service, ¶ 2.)

6

2. In accordance with the terms of the Credit Agreement, WGI is obliged to pay Lafarge the Invoice amounts ($281,664.22), interest charges on the unpaid sums due for those products at the rate of 1.5% per month or the maximum rate allowed by law, whichever is less, as well as Lafarge's cost of collection, including its attorney's fees, expenses, and court costs. A true and correct copy of the Invoices rendered to WGI for the transactions at issue are attached as Group Exhibit B to the Schultz Declaration.

3. Despite Lafarge's oral and written demands on WGI to pay all amounts due it, WGI has failed and refused to pay those amounts. (Schultz Dec. ¶ 12.)

4. Pursuant to Tennessee law, the maximum rate of interest for the time frame in which the Invoices have been due and owing is less than 18% per annum, and therefore the Credit Agreement requires the lower interest rate to be charged against the outstanding Invoice amounts. See TENN. CODE ANN. §§ 47-14-102(3), (7); 47-14-103(2). Interest accrued on the Invoice amounts due through May 5, 2009 is $17,904.59 and continues to accrue from and after May 6, 2009 at $55.94 per diem. (Schultz Dec. ¶ 11.)

5. Wells' execution of the Credit Agreement constitutes an absolute and unconditional guaranty for the obligations of WGI to Lafarge pursuant to the terms:

> IN CONSIDERATION FOR SALES TO APPLICANT [WGI] ON OPEN ACCOUNT, THE UNDERSIGNED [Michael Jason Wells] INDIVIDUALLY AND UNCONDITIONALLY GUARANTEES TO LAFARGE AND ITS SUCCESSORS, THE PROMPT PAYMENT OF SAID ACCOUNT IF NOT PAID WHEN DUE BY APPLICANT. APPLICANT AND THE UNDERSIGNED FURTHER AGREE TO REIMBURSE LAFARGE FOR ALL ATTORNEY'S FEES, COURT COSTS, AND OTHER CHARGES, IF THIS ACCOUNT SHOULD BE PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION.

(Credit Agreement, Exhibit A to Declaration of Roger Schultz.)

6. Due to the failure to pay by WGI, Wells has an obligation to pay the debt to Lafarge pursuant to the absolute and unconditional personal guaranty. *Klein v. Kern,* 28 S.W. 295, 296 (Tenn. 1894). Lafarge is entitled to collect the full debt owed by WGI from Wells. *Id.*

7. Lafarge retained legal counsel to enforce the Credit Agreement against Wells and WGI. (Schultz Dec. ¶ 16.) Lafarge has incurred $17,162.50 for its attorney's fees and expenses to collect on this account and prosecute this lawsuit for collection. (Declaration of James Oakley, Docket Entry #6; Affidavit of Mary Beth Hagan Regarding Additional Attorneys' Fees and Expenses.)

8. In considering an award for attorney's fees, the Court looks at certain factors to determine the reasonableness of those fees, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent;
>
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) whether the fee agreement is in writing.

TENN. SUP. CT. R. 8, Tenn. R. Prof. Conduct § 1.5; *see also Kline v. Eyrich*, 69 S.W.3d 197, 209 n. 11 (Tenn. 2002). Based on the affidavits before the Court, the Court concludes that

8

Case 4:08-cv-00095-HSM-WBC   Document 20   Filed 08/04/09   Page 8 of 9   PageID #: 269

the attorney's fees and expenses incurred by Lafarge are reasonable. Lafarge is entitled to an award of attorney's fees and expenses in the amount of $17,162.50.

## CONCLUSION

Accordingly, based on the reasons stated herein, it is RECOMMENDED that Lafarge be AWARDED judgment against Wells in the amount of $299,568.81, plus interest from and including May 6, 2009 to the date of this Order at the rate of $55.94 per diem and $17,162.50 in attorney's fees and expenses and court costs.[1]


Dated: August 4, 2009         s/William B. Mitchell Carter
                              UNITED STATES MAGISTRATE JUDGE


V:\DISTRICT\carter\Civil R&R\La Farge R & R.doc

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).